# NO. 12-23-00008-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *SKYLAR PAIGE VICKERS,*<br>*APPELLANT* | *§* | *APPEAL FROM THE COUNTY* |
| *V.* | *§* | *COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | *§* | *UPSHUR COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Appellant, Skylar Paige Vickers, appeals her conviction for assault. In two issues, she argues that the trial court erred in failing to obtain a written waiver of jury trial and contests the sufficiency of the evidence to support her conviction. We affirm.

## BACKGROUND

Appellant was charged by information with assault causing bodily injury, with the offense having occurred on August 13, 2022, in Upshur County, Texas. Appellant pleaded "not guilty," and the court set trial for December 15, 2022. Counsel for the State and for Appellant both affirmed on the record that the parties agreed to waive a jury. The trial court then asked Appellant whether she agreed with the jury waiver, and she answered affirmatively.

Mark Vickers, Appellant's father,[1] testified that on the evening of August 13, he and his girlfriend, Cheryl Risinger, were indoors watching television at his residence in Upshur County. At around 8:00 p.m., he discovered Appellant in a pasture on the same property, accompanied by an unidentified man. Appellant was dressed only in her undergarments and appeared to be intoxicated. Vickers stated that Appellant regularly abused alcohol. The man drove away in his

---

[1] Hereafter, "Vickers" identifies Mark Vickers.

vehicle, and Appellant claimed that he had her cell phone; Vickers pursued him and recovered Appellant's cell phone. After Vickers and Appellant returned to Vickers's house, Appellant became angry because Vickers did not immediately return her cell phone. Appellant moved aggressively toward Vickers, who was standing on the porch steps of the house. When Appellant attempted to strike Vickers with her hand, Risinger stepped between them and was struck "on top of the head." Thereafter, Vickers called 911, and Deputies Heath Littlejohn and Cory Nickerson of the Upshur County Sheriff's Office responded to the call.

Risinger testified to substantially the same series of events but added that when Vickers and Appellant reached the house, Appellant appeared to be under the influence of alcohol and was hopping around, spitting, and flailing her arms. Risinger did not see whether Appellant hit her with a closed fist or an open hand and was not sure if Appellant used her left or right hand. She felt some physical pain from Appellant's blow to her eye area. When law enforcement arrived, Risinger told them she wanted to press charges against Appellant. Vickers agreed that pressing charges was the right thing to do. Risinger additionally stated that she and Vickers had been working with cattle that day, received a blow to her cheekbone area from those activities, and suffered bruising as a result.

Littlejohn testified that when he arrived at the scene, he briefly interviewed Vickers and Risinger, who explained that Appellant assaulted Risinger. He and Nickerson then located Appellant inside an RV located on the property. Appellant was disheveled and smelled of alcohol. Littlejohn noticed that her hands were red, and that her right hand had more redness in the knuckle area than her left hand. Appellant could not seem to finish articulating one thought before moving on to the next, so Littlejohn had difficulty questioning her about what happened. He believed the alcohol reduced her mental capacity to answer. However, she kept mentioning her cell phone. Appellant stated several times that no assault occurred, but thereafter changed her story and claimed to strike Risinger in self-defense. Littlejohn and Nickerson arrested Appellant based upon the evidence at the scene and Risinger's desire to press charges.

Appellant testified that she arrived at Vickers's property earlier in the day to remove her possessions from the property. She admitted consuming "a couple" beers the night before as well as a "little tiny shot of Fireball" at approximately 11:00 a.m. Appellant required menstrual products, but no one answered the door at the house. She walked to some rental houses located on the same property (also owned by Vickers) to find someone who would drive her to a store.

2

She specifically sought Curtis Taylor, an individual employed by Vickers. She stated that the unidentified man, who worked with Taylor as a builder, agreed to drive her to the gas station. The man went inside the gas station, but thereafter informed Appellant they did not stock tampons, so she "figured it out." Thereafter, she and the unidentified man returned to the property, where he drove them to the pasture because Appellant wanted to "get sun." When Vickers arrived and began shouting, the man drove away with Appellant's cell phone still in the car. Vickers retrieved her phone from the man and drove Appellant back to the house. She demanded he return her phone, but when he did not return the phone, a verbal argument ensued. Appellant denied being physically close enough to Risinger to strike her, and claimed Risinger called law enforcement "just to be evil."

Appellant admitted that since 2020, she was convicted of driving while intoxicated twice, both times with a blood alcohol content higher than .15. She also had outstanding warrants for DWI from Oklahoma and Arkansas. Appellant further testified that on August 13, she was on deferred adjudication probation in Smith County for an unspecified felony. One condition of her probation was that she abstain from alcohol. At the time of the offense, she had recently been released from the Smith County jail after a probation violation, on the condition that she attend rehabilitation classes. She agreed that by drinking beer and Fireball, she again violated the terms of her probation. She denied having a drinking problem. Appellant claimed that her father was an alcoholic and a habitual liar.

The trial court found Appellant "guilty" of the charged offense and imposed punishment of 180 days' imprisonment. However, the judgment of conviction in the record erroneously states that a jury was impaneled, heard evidence, and rendered the verdict in this case.

Appellant moved for a new trial on grounds that the trial court's verdict was contrary to the law and evidence. The motion was overruled by operation of law. This appeal followed.

## WAIVER OF JURY TRIAL

Appellant argues that she was deprived of her constitutional right to a trial by jury because the trial court did not obtain a written waiver of jury trial, with the written consent and approval of the trial court and the State, pursuant to Article 1.13(a) of the Texas Code of Criminal Procedure.

**Standard of Review and Applicable Law**

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." U.S. CONST. amend. VI; *see Duncan v. Louisiana*, 391 U.S. 145, 149, 88 S. Ct. 1444, 20 L.Ed.2d 491 (1968) (applying the Sixth Amendment jury trial guarantee to the states). A defendant has a limited right to waive his constitutional right to a jury trial in favor of a bench trial or guilty plea. *Adams v. United States ex rel. McCann*, 317 U.S. 269, 275, 63 S. Ct. 236, 87 L.Ed. 268 (1942); *see* U.S. CONST. amend. VI; TEX. CONST. art. I, § 15; TEX. CODE CRIM. PROC. art. 1.12. The right is limited because the State must consent to the waiver, and the trial court must accept it. TEX. CODE CRIM. PROC. art. 1.13(a); *see Singer v. United States*, 380 U.S. 24, 36, 85 S. Ct. 783, 13 L.Ed.2d 630 (1965) (holding that it does not offend due process to conduct a jury trial in a criminal case against a defendant's wishes). Waiver of a constitutional right requires an "intentional relinquishment or abandonment of the right." *See Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L.Ed. 1461 (1938). On direct appeal, a jury waiver is never presumed from a silent record. *Munguia v. State*, 636 S.W.3d 750, 757 (Tex. App.—Houston [14th Dist.] 2021, pet. ref'd) (citing *Samudio v. State*, 648 S.W.2d 312, 314 (Tex. Crim. App. 1983)). "'[C]ourts indulge every reasonable presumption against waiver' of fundamental constitutional rights." *See Boykin v. Alabama*, 395 U.S. 238, 243, 89 S. Ct. 1709, 23 L.Ed.2d 274 (1969). "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 25 L.Ed.2d 747 (1970) (footnote omitted); *see Godinez v. Moran*, 509 U.S. 389, 400-01, 113 S. Ct. 2680, 125 L.Ed.2d 321 (1993) ("The purpose of the 'knowing and voluntary' inquiry ... is to determine whether the defendant actually ... understand[s] the significance and consequences of a particular decision.").

Whether "there is an intelligent, competent, self-protecting waiver of jury trial by an accused must depend upon the unique circumstances of each case." *Adams*, 317 U.S. at 278, 63 S. Ct. 236. Courts have considered a number of factors as applicable to the facts of the case when determining whether a jury trial waiver was knowing and intelligent. For example, they have considered (1) whether the defendant knew about his right to a jury and the nature of the right, (2) whether the defendant executed a written jury waiver, (3) whether the trial court admonished the defendant about his right to a jury, (4) the defendant's education, background, and legal

4

sophistication, (5) the level of the defendant's involvement in her defense and ability to understand courtroom discussion regarding waiver of a jury, (6) her words and actions, (7) discussions with trial counsel about the right to a jury and representations of trial counsel, (8) what language the defendant understands and if not English, the presence of an interpreter, (9) the lack of an objection before or shortly after the bench trial began, (10) whether there is a docket entry indicating both that the defendant expressly waived the right to a jury on the record and the waiver was voluntary, knowing, and intelligent. *See Rios v. State*, 665 S.W.3d 467, 479–82 (Tex. Crim. App. 2022); *Hobbs v. State*, 298 S.W.3d 193, 197 (Tex. Crim. App. 2009) ("As a matter of federal constitutional law, the State must establish, on the record, a defendant's express, knowing, and intelligent waiver of jury trial."). A violation of a defendant's constitutional right to a jury trial is structural error and not subject to a harmless-error analysis. *Rios*, 665 S.W.3d 467, 486–87.

As a matter of Texas statutory law, a defendant's jury trial waiver must be "in writing in open court with the approval of the court and the State." *Clark v. State*, 592 S.W.3d 919, 931 (Tex. App.—Texarkana 2019, pet. ref'd) (citing TEX. CODE CRIM. PRO. art. 1.13(a)). A trial court's failure to fulfill this statutory requirement is distinct from the federal constitutional structural error of failing to procure *any* waiver, which must be expressly, knowingly, and intelligently made. "Failure to comply with Article 1.13(a) is statutory error subject to a harm analysis under Rule 44.2(b) of the Texas Rules of Appellate Procedure, which requires us to disregard error that does not affect a defendant's substantial rights." *Id.* (citing *Johnson v. State*, 72 S.W.3d 346, 348–49 (Tex. Crim. App. 2002) (citing TEX. R. APP. P. 44.2(b)).

**Analysis**

The parties agree that Appellant did not execute a written waiver of her right to a jury trial. However, this is only one factor in determining whether Appellant's waiver was knowing and intelligent, and therefore whether any violation of her constitutional right to a jury trial occurred. And the record before us is not silent regarding this issue. *See Munguia*, 636 S.W.3d at 757. Before Appellant's bench trial began, the trial court asked Appellant whether she understood the charge against her. Appellant confirmed she understood and entered her plea of "not guilty." Counsel for both Appellant and the State stated on the record that both sides agreed to waive a jury trial. Additionally, the trial court specifically asked Appellant herself if she agreed to waive a jury trial, and she answered affirmatively. Appellant is a native English

speaker and testified at trial that she completed high school with good grades and attended some college. Appellant testified to having a previous criminal history, and there is no indication that she was unable to understand the brief courtroom discussion about waiving a jury trial. Although the Court sent correspondence to Appellant on December 6, 2022, notifying her of the bench trial scheduled for December 15, neither Appellant nor her counsel made any objection to trying the case without a jury either before or shortly after the bench trial began. Nor did Appellant ever indicate by words or actions that she wished to recant her verbal waiver or desired a jury trial. Considering these factors and the unique circumstances of this case, we conclude that Appellant expressly, knowingly, and competently waived her right to a trial by jury in this matter, and that there was no violation of her Sixth Amendment right to a jury trial. *See **Rios***, 665 S.W.3d at 479–82.

Nevertheless, Article 1.13(a) requires that a defendant's jury trial waiver be made in writing, and the record in this case does not contain written waiver from Appellant. Therefore, we must determine whether this statutory error harmed Appellant by affecting her substantial rights. ***Johnson***, 72 S.W.3d at 348. To decide this question, we ascertain whether she understood her right to trial by jury. ***Clark***, 592 S.W.3d at 931-32. Texas courts generally hold that when a trial court's judgment recites that a defendant waived the right of trial by jury, even in the absence of a written waiver, that recital is binding in the absence of direct proof of its falsity. ***Johnson***, 72 S.W.3d at 348; ***Whitaker v. State***, No. 12-22-00132-CR, 2023 WL 3033197, at *5 (Tex. App.—Tyler Apr. 20, 2023, no pet.) (mem. op., not designated for publication). The term "waive" presumes knowledge, because to waive a right one must first have knowledge of the existence of that right. ***Johnson***, 72 S.W.3d at 349. As previously noted, the judgment contains an error regarding the type of trial conducted, consequently, it does not contain a recital that Appellant waived her right to a jury trial. Thus, the presumption of regularity does not apply.

However, citing ***Johnson***, the Court of Criminal Appeals has opined that failure to comply with Article 1.13 can be harmless error in cases when a defendant waives that compliance as a matter of fact, even if the proper *form* of waiver is not present in the record. ***Lira v. State***, 666 S.W.3d 498, 518, n.113 (Tex. Crim. App. 2023); *see also **Sweeten v. State***, No. 05-01-00483-CR, 2002 WL 980675, at *3 (Tex. App.—Dallas May 14, 2002, no pet.) (mem. op., not designated for publication) ("A trial court's failure to procure a written jury waiver does not affect a defendant's substantial rights if the record otherwise reflects the defendant waived his

right to a jury trial."). For the same reasons we concluded that Appellant's waiver of her right to a jury trial was knowing, competent, and voluntary, we likewise conclude that Appellant understood her right to a trial by jury when making the waiver. Therefore, the trial court's error in failing to obtain a written waiver was harmless. *See Clark*, 592 S.W.3d at 931-32; *Tanner v. State*, No. 06-22-00030-CR, 2022 WL 3567909, at *2 (Tex. App.—Texarkana Aug. 19, 2022, no pet.) (mem. op., not designated for publication).

We overrule Appellant's first issue.

## LEGAL SUFFICIENCY OF EVIDENCE

In her second issue, Appellant contends that the evidence is insufficient to support a finding beyond a reasonable doubt that she intentionally, knowingly, or recklessly caused bodily injury to Risinger by striking her on the face or head with Appellant's hand or fist.

### Standard of Review

The standard of review for sufficiency of the evidence is whether any rational finder of fact could have found the appellant guilty beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 315–16, 99 S. Ct. 2781, 2786–87, 61 L.Ed.2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). In reviewing the legal sufficiency of the evidence, we consider all the evidence in the light most favorable to the verdict and determine whether any rational factfinder could have found the essential elements of the crime beyond a reasonable doubt based on the evidence and reasonable inferences from that evidence. *Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014); *Brooks*, 323 S.W.3d at 898–99 (Tex. Crim. App. 2010). The trier of fact is the sole judge of the credibility of the witnesses and can believe all, some, or none of the testimony presented, and a reviewing court affords almost complete deference to a factfinder's decision when that decision is based upon an evaluation of credibility. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991); *see also Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). We defer to the trier of fact's resolution of any conflicting inferences raised in the evidence and presume that the trier of fact resolved such conflicts in favor of the verdict. *Jackson*, 443 U.S. at 326, 99 S.Ct. 2781; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

The sufficiency of the evidence is measured against the offense(s) as defined by a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App.

1997). A hypothetically correct jury charge "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried." *Id.*

**Applicable Law**

A person commits an assault if she intentionally, knowingly, or recklessly causes bodily injury to another. TEX. PENAL CODE ANN. § 22.01(a)(1) (West 2023). In Texas, assault is generally a Class A misdemeanor. *Id.* § 22.01 (a)(1)(b) (West 2021).

A person acts intentionally when it is her conscious objective or desire to engage in the conduct or cause the result; a person acts knowingly when she is aware of the nature of her conduct or that the circumstances exist; and a person acts recklessly "when [s]he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." *Id*. § 6.03(a), (b), (c) (West 2021). The trier of fact may infer intent from circumstantial evidence, such as the defendant's acts, words, and conduct. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004).

A finding of causation is appropriate when a result would not have occurred but for the defendant's conduct, operating either alone or concurrently with another cause. TEX. PENAL CODE ANN. § 6.04(a) (West 2021). Bodily injury is defined as "physical pain, illness, or any impairment of physical condition." *Id.* § 1.07(a)(8) (West 2021). Any physical pain, no matter how minor, is sufficient to establish bodily injury, and a factfinder may infer that a victim actually suffered physical pain even without witness testimony to that effect. *Garcia v. State*, 367 S.W.3d 683, 688 (Tex. Crim. App. 2012).

**Analysis**

Appellant argues that the evidence "appears to be insufficient" because (1) Vickers did not "really see" Appellant strike Risinger, (2) the State introduced no evidence of later bruising on Risinger's face, and (3) "it's just [Risinger's] word against Appellant's." But these arguments do not address the essential elements of the offense of assault.

Addressing the *mens rea* requirement, both Vickers and Risinger testified that Appellant was angry because Vickers had her cell phone, and that Appellant tried to hit Vickers but struck Risinger because she was in the way. Littlejohn testified that Risinger's story was consistent when he spoke to her, while Appellant appeared intoxicated, had redness on the knuckles of her

8

dominant hand, and stated both that she did not hit Risinger and that she struck Risinger in self-defense. Conversely, Appellant testified that she did not strike Risinger at all. The trial court was entitled to adjudge the credibility of each witness and choose whether to believe all, some, or none of each witness's testimony. *See **Lancon***, 253 S.W.3d at 705. Based upon the verdict, we can infer that the trial court found Vickers, Risinger, and Littlejohn's testimony more credible than Appellant's, and we afford great deference to that determination. *See **Chambers***, 805 S.W.2d at 461. The trial court could reasonably have inferred from the evidence that Appellant was, at a minimum, aware of the nature of her conduct, and acted intentionally, knowingly, or recklessly in striking Risinger. As to causation of bodily injury, Risinger testified that Appellant's blow to her eye area caused her pain, and even minor physical pain is sufficient to establish this element of the offense. *See **Garcia***, 367 S.W.3d at 688.

Viewing the evidence in the light most favorable to the verdict, we cannot conclude that no rational trier of fact could have found the essential elements of assault beyond a reasonable doubt. Because the evidence is sufficient to support Appellant's conviction, we overrule her second issue.

## DISPOSITION

Having overruled Appellant's two issues, we ***affirm*** the trial court's judgment.

JAMES T. WORTHEN
Chief Justice

Opinion delivered June 30, 2023.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

9



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JUNE 30, 2023**

**NO. 12-23-00008-CR**

**SKYLAR PAIGE VICKERS,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

---

Appeal from the County Court

of Upshur County, Texas (Tr.Ct.No. 41590)

---

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this Court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED, and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*